UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
THE AMALGAMATED NATIONAL HEALTH                                         :
FUND, et al.,                                                           :
                                                                        :
                                        Plaintiffs,                     :
                                                                        :        23-CV-01428 (JAV)
            -v-                                                         :
                                                                        :        OPINION AND ORDER
HICKEY FREEMAN TAILORED CLOTHING,                                       :
INC., et al.,                                                          :
                                                                        :
                                        Defendants.                     :
                                                                        :
------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Before the Court are Plaintiffs' objections to Magistrate Judge Katharine

Parker's June 24, 2025 Report and Recommendation. ECF No. 120 ("Objs." or

"Objections"). In her thoughtful and well-reasoned Report and Recommendation,

Magistrate Judge Parker recommended granting in part and denying in part both

Plaintiffs' and Defendants' motions for summary judgment. ECF No. 119 ("R&R" or

"Report and Recommendation"). For the following reasons, the Courts overrules

Plaintiffs' Objections and **ADOPTS** the Report and Recommendation in its entirety.

## BACKGROUND

On April 12, 2023, Plaintiffs the Amalgamated National Health Fund (the

"Health Fund"), the Trustees of the Amalgamated National Health Fund (the

"AMNH Trustees"), the National Plus Plan, and the Trustees of the National Plus

Plan filed an Amended Complaint. ECF No. 28 ("Am. Compl." or "Amended

Complaint"). The Amended Complaint asserted claims pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA") against Defendants Hickey Freeman Tailored Clothing, Inc. ("Hickey Freeman") and Stephen Granovsky ("Granovsky") (collectively, "Defendants") to (i) enforce a collective bargaining agreement ("CBA") between Hickey Freeman and the Rochester Regional Joint Board, Workers United (the "Union") and (ii) collect delinquent contributions, liquidated damages, interest, and attorneys' fees and costs. *Id.* at 1. The claims against the Pension Fund related to the 401(k) contributions were later settled, leaving only the claims by the Health Fund and AMNH Trustees. *See* R&R at 11.

On October 15, 2024, the Health Fund and the AMNH Trustees (collectively, "Plaintiffs") moved for summary judgment on all claims against Hickey Freeman and partial summary judgment against Granovsky on an unpleaded breach of fiduciary duty claim ("fiduciary breach claim"). ECF No. 79 ("Pls. Mot." or "Plaintiffs' Motion"). On November 19, 2024, Defendants cross-moved for summary judgment to dismiss all claims against Granovsky. ECF No. 91 ("Defs. Cross-Mot." or " Defendants' Cross-Motion").

On June 10, 2025, Magistrate Judge Parker issued an R&R in this matter. Therein, she recommended granting Plaintiffs' Motion as to Hickey Freeman and denying without prejudice the fiduciary breach claim against Granovsky. R&R at 1-2. Magistrate Judge Parker also recommended granting Defendants' Cross-Motion

as to the fraud claim against Granovsky and denying without prejudice the fiduciary breach claim against Granovsky.[1]  *Id.* at 2.

More specifically, Magistrate Judge Parker first recommended granting Plaintiffs' Motion and awarding damages of $3,508,460.76, which is the amount that Plaintiffs allege Hickey Freeman failed to pay in required employer and employee contributions under the CBA for the period from part of October 2020 through January 2023.  *Id.* at 3, 14-15.  She noted that the $3,508,460.76 figure was not genuinely disputed considering credible testimony, defense counsel's concession at oral argument that the amount owed to the Health Fund was $3,508,460.76, and Defendants' failure to present specific evidence supporting an alternative calculation or refuting the Health Fund's calculation.  *Id.* at 16-17.

Magistrate Judge Parker also recommended that Plaintiffs be granted interest and liquidated damages on the $3,508,460.76 award, as well as reasonable attorneys' fees and costs.  *Id.* at 17-19.  Tracking language from ERISA and relevant provisions of the CBA, she recommended that Plaintiffs be awarded interest at the rate of one percent (1%) per month or part thereof and liquidated damages at an amount equal to the greater of interest on or twenty percent (20%) of the Delinquent Contributions.  *Id.* at 3, 15, 17-19.  Magistrate Judge Parker further

---

[1] Although Magistrate Judge Parker recommended denying both the Plaintiffs' Motion and Defendants' Cross-Motion as to the breach of fiduciary claim against Granovsky, adopting those recommendations would effectively dismiss that claim because she recommended denial on the basis that the claim was never formally asserted.  *See* R&R at 22-23.

recommended that Plaintiffs be permitted to submit a motion for reasonable attorneys' fees and costs. *Id.* at 19.

Next, Magistrate Judge Parker recommended denying without prejudice Plaintiffs' Motion and Defendants' Cross-Motion as to the fiduciary breach claim against Granovsky. Observing that Plaintiffs failed to plead this claim, Plaintiffs did not formally move to amend the complaint, Plaintiffs failed to demonstrate good cause to amend the complaint, the fiduciary breach claim and the fraud claim rely on different sets of facts to support their elements, and allowing Plaintiffs to now amend their pleading would prejudice Granovsky, the Magistrate Judge concluded that Plaintiffs should not be permitted to assert a new claim in their summary judgment papers. *Id.* at 20-23. Further, since a fiduciary breach claim had not been formally asserted against Granovsky, Magistrate Judge Parker recommended denying Defendants' Cross-Motion on that claim as well. *Id.* at 22-23.

Finally, Magistrate Judge Parker recommended granting Defendants' Cross-Motion to dismiss the fraud claim against Granovsky because no reasonable jury could conclude that he had committed fraud against the Health Fund. *Id.* at 30. The Magistrate Judge first noted that Plaintiffs' fraud claim rests on five statements made by Granovsky or Alan Peck, whom Plaintiffs allege acted as Granovsky's agent, representing that Hickey Freeman would pay the delinquent contributions owed to the Health Fund. *Id.* at 24-25. Magistrate Judge Parker concluded that the alleged fraudulent statements are too vague to constitute a promise or a promise on which a reasonable person would rely. *Id.* at 26. She also

4

held that there was no evidence of intent to defraud and that the statements could not serve as the basis for a fraud claim because they were made in the context of a failed settlement negotiation. *Id.*

On June 24, 2025, Plaintiffs submitted their Objections to Magistrate Judge Parker's R&R. Objs. On July 8, 2025, Defendants filed their response to Plaintiffs' Objections, ECF No. 121, but Defendants did not themselves file any objections to Magistrate Judge Parker's R&R.

## LEGAL STANDARDS

When reviewing a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). After a party submits a timely objection, the district court reviews de novo the portions of the R&R to which the party properly objected. *Id.*; Fed. R. Civ. P. 72(b)(3). For the portions of the R&R to which no objection is made, the district court need only review for clear error. *See Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020).

"The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97-CV-3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (cleaned up). In following that purpose, it is therefore "established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation

5

that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citation omitted).

## DISCUSSION

Plaintiffs have raised objections to Magistrate Judge Parker's recommendations regarding (1) the fraud claim against Granovsky and (2) the fiduciary breach claim against Granovsky. Objs. at 4, 9.

Upon conducting a de novo review of the portions of the R&R to which Defendants have properly objected, the Court overrules such objections. Any of Defendants' objections not specifically addressed in this decision have been considered de novo and subsequently rejected. As to the portions of the R&R to which no proper objections were made, the Court has reviewed those sections and determined that they are not clearly erroneous. The Court therefore adopts the R&R in its entirety.

### A.    The Fraud Claim Against Granovsky

Plaintiffs object to Magistrate Judge Parker's recommendation concerning the fraud claim against Granovsky on three bases: (1) Magistrate Judge Parker failed to apply the correct standard, (2) Magistrate Judge Parker failed to properly evaluate the evidence underlying Plaintiffs' fraud theory based on omissions, and (3) Magistrate Judge Parker erroneously determined that no reasonable jury could have concluded that Plaintiffs reasonably relied on Granovsky's alleged false representations. *See id.* at 5-9. Plaintiffs' arguments are unavailing.

6

1.    **The R&R Applied the Correct Standard of Review**

First, citing three cases—*Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127 (S.D.N.Y. 1988); *Buccino v. Cont'l Assur. Co.*, 578 F. Supp. 1518 (S.D.N.Y. 1983); *Samuels v. Mockry*, 77 F.3d 34 (2d Cir. 1996)—Plaintiffs argue that Magistrate Judge Parker failed to employ a purported "heightened standard" that applies to fraud claims on summary judgment. *Id.* at 5. Plaintiffs misstate the law.

The cases cited by Plaintiffs simply illustrate that courts apply the standard typically applied to evaluate summary judgment motions pursuant to Federal Rule of Civil Procedure 56 and that, when evaluating fraud claims, that evaluation often "hinges upon the credibility of the various parties to the alleged fraud and the believability of their testimony as to what statements were made and with what intention," thereby "necessitat[ing] credibility assessments which are exclusively within the province of the jury." *See, e.g., Sound Video Unlimited*, 700 F. Supp. at 135. Accordingly, courts are "especially reluctant to grant summary judgment when questions of fraud [are] at issue," *Buccino*, 578 F. Supp. at 1523, such as where there is a "battle of affidavits" creating a genuine dispute as to the intent of the party alleged to have committed fraud, *Sound Video Unlimited*, 700 F. Supp. at 139. Nonetheless, fraud claims do not always survive summary judgment, especially where there is no "battle of affidavits." *Id.* Indeed, "Plaintiffs cannot rest their opposition to defendants' motion on mere conclusory allegations." *Buccino*, 578 F. Supp. at 1523. The Court discerns no error in Magistrate Judge Parker's application of this familiar Rule 56 standard in this context.

**2.    Fraud Claims Based Upon Omissions**

A controlling corporate official can be held individually liable under Section 502 of ERISA if that official defrauds a benefit fund of required contributions. *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 32 (2d Cir. 1994). To prove a fraud claim under this standard, Plaintiffs must demonstrate "1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff[s]." *Id.* The Magistrate Judge correctly held that Defendants were entitled to summary judgment because 1) certain of the alleged misstatements were not actually false; 2) other of the alleged misstatements were too vague to constitute a material false representation on which a reasonable person would rely, and 3) there was no evidence of intent to defraud. R&R at 26-30. The Court agrees with Magistrate Judge Parker's analysis.

Plaintiffs object that the Magistrate Judge did not consider their fraud theory based on omissions, and thus ignored evidence of (1) Granovsky's omission that he "had no intent of ever paying Hickey Freeman's delinquent contributions to the Health Fund" and (2) Granovsky's omission that "Hickey Freeman could not [pay the delinquent contributions to the Health Fund]." Objs. at 6. Yet Plaintiffs never pleaded a fraud claim against Granovsky premised upon a fraudulent omission theory, *see generally* Am. Compl., and only raised such a theory for the first time in opposition to Defendants' Cross-Motion, *see* ECF No. 101 at 13-15.

8

Even if they had properly pleaded this claim, Plaintiffs failed to adduce evidence sufficient to create a disputed issue of fact as to a fraud claim premised on material omissions of fact. The first omission that Plaintiffs point to—Granovsky's alleged omission that he had no intent of directing Hickey Freeman to pay its delinquent contributions to the Health Fund—is merely a reframing of the claims based upon alleged fraudulent promises to pay. *See, e.g.*, Objs. at 6 (arguing that, for each fraudulent misrepresentation that payments were forthcoming, there is an underlying omission that he never intended to pay). In other words, the purported "omission" is that, when Granovsky promised to pay his arrears, he failed to reveal that he was lying. The R&R comprehensively addressed why these purported misstatements were either not false or could not form the basis of an actionable fraud claim. R&R at 26-30.

The second omission that Plaintiffs point to—Granovsky's alleged omission that Hickey Freeman could not pay the delinquent contributions to the Health Fund, Objs. at 7—is unsupported by the evidence. Far from omitting such financial information from his conversations with Health Fund personnel, the record instead establishes that Granovsky was forthright about Hickey Freeman's financial position.[2] As Magistrate Judge Parker observed, "[t]he Health Plan was aware that

---

[2] Plaintiffs point to Granovsky's deposition testimony as evidence of this purported omission. Granovsky was asked whether he "deem[ed] the payments to the health fund as one hundred percent mandatory to keep the business functioning." ECF No. 84-1 at 155:3-6. In response, Granovsky stated:

> I want to be careful about a characterization misrepresenting what we were doing. We were literally paying payroll and a limited amount

Hickey Freeman was dealing with financial issues due to the pandemic and discussed an installment plan with Hickey Freeman to pay off the Delinquent Contributions over time." R&R at 27. Cyndi Katsaras ("Katsaras"), the Health Fund administrator who communicated with Granovsky and Peck about Hickey Freeman's delinquent contributions, *see* R&R at 8, conceded that she was aware that Hickey Freeman was financially struggling from 2020 to 2023 through her conversations with Granovsky and Peck during that period, *see* ECF No. 88-3 ("Katsaras Dep.") at 73:3–74:12. She also testified that she does not believe that Granovsky or Peck ever misled her about the financial condition of Hickey Freeman. *See id.* at 107:15-22. It was because of its awareness of the

---

beyond that to whatever would keep the business alive for another week or another two weeks or another three weeks. We were dealing with a pandemic that had ravaged the business. I don't know what we would have done. Had Amalgamated said we are terminating unless you pay all of the arrears at the point at which the arrears were small, maybe we would have come to some accommodation. At the point at which the arrears had gotten larger towards the middle or end of the pandemic to be candid with you, we would have probably shut the factory. There is no – that's why I say it wasn't about – we didn't have the money, we didn't have the cash flow. It was either mass layoff and hope they would return at a later date, shut the factory entirely, which our two biggest competitors did, or try and maintain the factory, maintain the jobs, and rely on the continued support of Amalgamated and some other creditors in the meantime. That was our only alternative.

*Id.* at 155:7–156:11. Granovsky never testified, however, that Hickey Freeman would never have been able to pay their arrears. He only testified that they could not pay the delinquent contributions to the Health Fund *all at one time* due to their ongoing financial troubles during the latter half of the COVID-19 pandemic. This is entirely consistent with the information that was contemporaneously conveyed to the Health Fund.

precariousness of Hickey Freeman's financial situation that the Health Fund accepted partial payments towards Hickey Freeman's delinquent contributions. *See* ECF No. 103-1 at NHF0000308-15; ECF No. 103-3 at D0000856-58.

### 3.    Reasonable Reliance on Misstatements

Plaintiffs also challenge the R&R's holding that no reasonable jury could have concluded that Plaintiffs reasonably relied on Granovsky's alleged false representations. Objs. at 8-9. Notably, Plaintiffs do not address Magistrate Judge Parker's apt conclusion that two of the five purported categories of misstatements were not materially false. R&R at 26-28. Nor do Plaintiffs object to the Magistrate Judge's finding that there was no evidence of fraudulent intent with respect to the third and fourth category of misstatements. *Id.* at 28-29. The Court finds no clear error in Magistrate Judge Parker's analysis. Accordingly, the Court need not reach the question of reasonable reliance with respect to those four statements, as Plaintiffs' fraud claims fail on other grounds.

With respect to the fifth category of statements, made during settlement negotiations between November 2022 and January 2023, R&R at 25, Plaintiffs point to a January 24, 2023 email, which they characterize as a promise to pay the remaining arrears, and a representation that Hickey Freeman had the ability to pay. Objs. at 9. Plaintiffs argue that a reasonable jury could conclude that they reasonably relied on this misstatement to their detriment. *Id.* at 8-9. Yet the undisputed evidence establishes that Plaintiffs did *not* rely on these representations. On January 20, 2023, the Health Fund informed Hickey Freeman

that its employee health coverage would be terminated effective January 31, 2023. ECF No. 88-6.  The January 24 email was an attempt to persuade the Health Fund to reverse this decision.  ECF No. 104-2.  The Health Fund did not, however, reverse its decision, and coverage terminated on January 31.  ECF No. 83 at ¶ 29.  On these facts, there can be no finding of reasonable reliance based upon the January 24 email.[3]

## B.    The Fiduciary Breach Claim Against Granovsky

Plaintiffs argue that they should be permitted to move forward with their breach of fiduciary duty claim against Granovsky because Granovsky had fair notice of Plaintiffs' claim, and Granovsky would not be prejudiced because further discovery on this claim is futile.  *See* Objs. at 9-14.  The Court is not persuaded.

The pleading standard under Rule 8 of the Federal Rules of Civil Procedure is "extremely permissive."  *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004).  A claim must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002) (citation omitted).  "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be

---

[3] Indeed, Plaintiffs' own witness attested that he viewed the promises in the January 24 email "as insincere and transparent attempts to keep the Health Fund from terminating health coverage," ECF No. 104, ¶ 10, which further undermines any argument that Plaintiffs relied upon these representations.

assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). To satisfy the fair notice requirement, a plaintiff is not required to plead a particular legal theory or cite statutes or case law. *Wynder*, 360 F.3d at 77.

Even when assessed under this liberal standard, Granovsky did not have fair notice that Plaintiffs were asserting a fiduciary duty claim against him. Plaintiffs cite paragraphs 26-32, 64, and 83-90 of the Amended Complaint as providing the relevant allegations of a fiduciary breach. Objs. at 10. While many of those paragraphs set out allegations that Hickey Freeman failed to pay contributions to the Health Fund, *see* Am. Compl., ¶¶ 26-32, 64, the paragraphs which state the cause of action against Granovsky refer to false representations and reasonable reliance, tracking the language of the relevant fraud standard, *see id.*, ¶¶ 83-90. Plaintiffs never once use the term "fiduciary" in connection with Granovsky in the Amended Complaint, nor do they cite the relevant statutory provision concerning liability for a breach of fiduciary duty under ERISA, 29 U.S.C. § 1109. *See generally id.* Instead, the Amended Complaint specifically states that it was brought against Granovsky "in his capacity as Hickey Freeman's controlling corporate official pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, . . . in connection with Mr. Granovsky fraudulently inducing the Health Fund to continue providing health and welfare coverage to Hickey Freeman's employees." *Id.*, ¶ 1.

Additionally, the Amended Complaint does not allege facts sufficient to establish that Granovsky was a fiduciary with respect to plan assets. Corporate officers can be subject to ERISA fiduciary duties if they "exercise[] any authority or

13

control respecting management *or* disposition of [plan] assets." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  Plan assets include the employees' contributions to a health fund.  *Id.* at 39.  Yet the Amended Complaint says nothing about the employee contribution portions of the delinquent payments or Granovsky's control over the remittance of such employee contributions to the Health Fund.  It never distinguishes between general arrears due to the Health Fund and the employee contributions.  The closest allegation in the Amended Complaint is paragraph 64, which states that "Mr. Granovsky directed the payment and non-payment of Hickey Freeman's owed contributions to the Health Fund."  Yet throughout the Amended Complaint, the term contribution is used to refer to the total amount owed to the Health Fund, not the employee contribution portion.  *See, e.g.*, Am. Compl., ¶¶ 36, 37, 58, 87.

Perhaps most fatally for Plaintiffs' argument, in issuing an earlier Report and Recommendation with respect to the motion to dismiss the fraud claims against Granovsky, Magistrate Judge Parker observed that Plaintiffs had not asserted a fiduciary duty claim in the Amended Complaint.  ECF No. 68 at 10 n.1.  Specifically, she stated:  "Alternatively, 'plan fiduciaries may be held liable in their personal capacities under ERISA for breach of their fiduciary duties.' . . . Plaintiffs do not allege that Granovsky is a fiduciary of the Health Fund and instead rely on the theory that he is individually liable because of his alleged fraudulent conduct."  *Id.*  Plaintiffs did not object to this characterization of their claims, ECF No. 71, nor did they seek leave to amend to assert a fiduciary duty claim.  Accordingly,

14

throughout the whole of this litigation, the parties proceeded under the understanding that the sole claim against Granovsky sounded in fraud.

Plaintiffs argue that Magistrate Judge Parker ignored Second Circuit precedent that permits Plaintiffs to pursue new claims on summary judgment without first amending their complaint. Objs. at 11-12. Plaintiffs misread this caselaw. In *Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986), a *pro se* plaintiff filed a legal malpractice action against her former attorney. The plaintiff later moved for leave to amend her complaint to assert contract and negligence claims, but the district court denied this motion. *Id.* at 837. Noting that under Rule 15 "leave to amend 'shall be freely given when justice so requires,'" and that the plaintiff there did not know the factual basis of her additional claims at the time she filed her original complaint, *id.* at 840, the Second Circuit reversed, *id.* at 842-843. In doing so, the Second Circuit also held that the fact that discovery had closed did not cause prejudice to the defendants because the new claims arose from the same operative facts. *Id.* at 841. The Second Circuit never suggested that amendment of the pleading was not required to assert a new claim, however—indeed, the opinion addresses a district court's denial of leave to amend, not denial of a spontaneously asserted new claim. *Id.*

Plaintiffs here have not moved to amend. Even had they done so, that motion would be denied. Because the deadline to amend the complaint was July 14, 2023, ECF No. 39 at 1, Plaintiffs would have to demonstrate "good cause" for an extension of that deadline under Rule 16(b)(4). *See Parker v. Columbia Pictures Indus.*, 204

15

F.3d 326, 340 (2d Cir. 2000) ("the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."). "A district court has broad discretion in deciding whether good cause exists to amend the scheduling order." *Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (GHW), 2021 WL 780139, at \*4 (S.D.N.Y. Jan. 27, 2021). A finding of "good cause" depends on the diligence of the moving party. *Parker*, 204 F.3d at 340.

Plaintiffs have not demonstrated such diligence in timely seeking to amend the Complaint. At oral argument, Plaintiffs stated that they learned the evidence supporting their fiduciary duty claim during the deposition of Granovsky in October 2023. ECF No. 117 at 23:19–24:10 (Richmond). Plaintiffs did not move to amend their complaint at that time, or at any time in the years that followed. Plaintiffs' failure to timely file a motion is particularly egregious as Plaintiffs were put on notice that no such fiduciary duty claim had been pleaded when Magistrate Judge Parker issued her Report & Recommendation concerning Defendants' motion to dismiss in February 2024. ECF No. 68 at 10 n.1. Plaintiffs have yet to provide any explanation for their inordinate delay. On this record, permitting Plaintiffs to amend the Complaint following the close of discovery, without having submitted a motion to do so, and after the parties and the Court have expended resources adjudicating cross-motions for summary judgment would be unjust and prejudicial.

16

**CONCLUSION**

Having addressed Defendants' objections, the Court has otherwise reviewed the record and the Report and Recommendation for clear error. Finding none, the Court hereby **ORDERS** that the Report and Recommendation is **ADOPTED** in its entirety. Accordingly, Plaintiffs' Motion and Defendants' Cross-Motion are both **GRANTED IN PART AND DENIED IN PART**.

The parties are directed to file a joint letter within two weeks of the date of this Opinion and Order, setting forth their respective positions regarding next steps in this case. This letter should address whether Plaintiffs intend to file a motion for attorneys' fees and costs, and if so a proposed briefing schedule for this motion, whether any claims remain outstanding, and whether judgment can be entered in this case.

The Clerk of Court is directed to terminate ECF Nos. 79 and 91.

SO ORDERED.

Dated:  March 17, 2026  
     New York, New York              _____  
                               JEANNETTE A. VARGAS  
                               United States District Judge